IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW M MEXICO


**PATRICIO JUAN MEDINA,**

      **Plaintiff,**

    **vs.**                                                             **Civ. No. 12-1180 ACT**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Reverse or Remand for Payment of Benefits, or in the Alternative, for Rehearing, With Supporting Memorandum ("Motion") of the Plaintiff Patricio Juan Medina ("Plaintiff"), filed July 3, 2013 [Doc. 16]. On September 3, 2013, the Commissioner of Social Security ("Defendant") filed a Response [Doc. 17], and Plaintiff filed a Reply on July 8, 2013 [Doc. No. 18]. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that Plaintiff's Motion is well taken and will be **GRANTED**.

## I.  PROCEDURAL RECORD

On July 22, 2008, Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, and on July 25, 2008, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3). [Tr. 122-125, 126-129.] Plaintiff alleges a disability beginning July 1, 2008, due to "back problems, triple by-pass, other." [Tr. 159.]

Plaintiff's application was initially denied on January 23, 2009, and denied again at the reconsideration level on May 29, 2009. [Tr. 56-59, 64-66.]

The ALJ conducted a hearing on April 22, 2010. [Tr. 23-46.] At the hearing, Plaintiff was represented by Attorney Kalli Gordon.[1] On August 24, 2010, the ALJ issued an unfavorable decision. In her report, the ALJ found that since June 2009, the Plaintiff had the following severe impairments: coronary artery disease status post coronary artery bypass grafting and chronic shoulder pain. [Tr. 12.] The ALJ also determined that since June 2009, the Plaintiff had the following nonsevere impairments: history of lumbar fusion surgery, gastroesophageal reflux disease, depression, marijuana dependency and hypertension. [Tr. 14.] However, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Id.] The ALJ found that "[Plaintiff] has the residual functional capacity to perform light work . . . except the [Plaintiff] can only occasionally reach overhead due to shoulder pain." [Id.] The ALJ concluded that Plaintiff is not capable of performing past relevant work, but that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that existing significant numbers in the national economy that he can perform. [Tr. 16.]

On January 20, 2012, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. [Tr. 1-3.] On November 15, 2012, the Plaintiff filed his Complaint for judicial review of the ALJ's decision. [Doc. 1.]

---

[1] Plaintiff is currently represented by Attorney Francesca J. MacDowell.

Plaintiff was born on May 12, 1960. [Tr. 122.]  The Plaintiff completed the twelfth grade, and has work experience as a construction laborer.  [Tr. 160, 165.] The ALJ found that Plaintiff had engaged in substantial gainful activity since his alleged onset date of July 1, 2008. [Tr. 12.]

## II.  STANDARD OF REVIEW

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).  In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).   Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[2]

---

[2]  Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(C).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id*. (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214 (quotation omitted).

### III.  MEDICAL HISTORY

Plaintiff alleges a disability beginning July 1, 2009, due to a "back problems, triple by-pass, and other." [Tr. 159.] He stated as follows:

> I'm on medication and can't perform jobs. I underwent by-pass surgery 11/05 and continue to have problems with that. I suffered a heart attack last week and also prior to that. I am experiencing shoulder pain/back and chest.

[Id.] The Plaintiff reported to Social Security that he stopped working his last job because he was laid off. [Tr. 159.]

#### A.     Coronary Artery Disease

Plaintiff has a history of triple bypass surgery in October 2006. [Doc. 16 at 1; Tr. 27.] Plaintiff also reported subsequent myocardial infarctions in July 2008 and January 2009. [Tr. 204-205, 350-352.]

On July 15, 2008, Plaintiff presented to Alta Vista Regional Hospital in Las Vegas, New Mexico, with complaints of intense left shoulder/chest pain of several hours. [Tr. 206.] An

EKG done in the emergency department showed "possible old anterolateral MI, no acute ST-segment elevation or depression. His troponin level was within normal limits but in view of his history, he was admitted for further observation." [Id.] Plaintiff was subsequently transferred to the VA Medical Center in Albuquerque, New Mexico, for cardiac catheterization. [Tr. 204.]

On July 16 2008, Plaintiff was admitted to the VA Medical Center with a principal diagnosis of non-ST segment elevation myocardial infarction. [Tr. 238.] Plaintiff underwent a cardiac catheterization during his two-day hospital stay which showed his grafts were patent and that aggressive medical management was the goal for secondary prevention. [Tr. 239, 252.] Plaintiff was discharged in stable condition on July 18, 2008. [Tr. 241.] Plaintiff's heart medications at discharge included Aspirin, Atorvastatin, Plavix, Lisinopril, Metoprolol and Nitroglycerin. [Tr. 240.] Plaintiff was also counseled regarding complying with medication protocols, stopping his daily use of marijuana, eating a low fat/low cholesterol diet, and following up with cardiology. [Tr. 239, 249, 277.]

On January 27, 2009, Plaintiff was admitted to the VA Medical Center with a principal diagnosis of non-ST segment elevation myocardial infarction. [Tr. 350.] Plaintiff underwent a cardiac catheterization with cutting balloon angioplasty to reduce Plaintiff's left anterior descending coronary artery stenosis from 90% to 20%. [Id.] Plaintiff was discharged in good condition on January 30, 2009. [Tr. 352.] Plaintiff's heart medications at discharge included Aspirin, Atorvastatin, Plavix, Lisinopril, Metoprolol and Nitroglycerin. [Tr. 351.] Plaintiff was referred to Cardiac Rehabilitation, advised to eat a "cardiac" diet, and told to follow up with cardiology in one month. [Tr. 352.]

On April 10, 2009, Plaintiff had a myocardial perfusion study with ejection fraction because of atypical chest discomfort. [Tr. 328.] The study revealed as follows:

> A small focal fixed defect involving the distal anterior wall, likely representing infarction
>
> .
>
> No evidence of ischemia.
>
> Normal resting systolic function. There is a small region of focal hypokinesis of the distal anterior wall.

[Tr. 330.] On April 10, 2009, Plaintiff was also evaluated for his ability to exercise. [Tr. 354.] Plaintiff was able to exercise without anginal discomfort and was limited only by fatigue and knee pain. [Tr. 353.] Plaintiff was encouraged to continue with a daily exercise program with a goal of a minimum of 30 minutes aerobic activity daily. [Tr. 354.]

On November 4, 2009, Plaintiff presented to the VA Medical Center complaining of chest and leg pain, and wanting to discuss his medications. [Tr. 467.] Plaintiff reported that since increasing his exercise he was having bilateral anterior chest pain that was relieved only with rest and pain medication. [Id.] Plaintiff was diagnosed with atypical chest pain. [Id.] Plaintiff's medications were renewed and Plaintiff was counseled regarding his alcohol consumption and its effects on hypertension, medication interactions and depression. [Tr. 469.]

### B.   Chronic Shoulder Pain

On December 22, 2007, Plaintiff was seen in the VA Medical Center Emergency Department for complaints of shoulder pain. [Tr. 278.] Plaintiff was given Hydrocodone/ Acetaminophen for pain and advised to follow up with primary card provider to further evaluate his shoulder pain. [Tr. 279.]

On July 15, 2008, Plaintiff presented to the Alta Vista Regional Hospital Emergency Department in Las Vegas, New Mexico, complaining of left shoulder pain accompanied by nausea and general malaise. [Tr. 204.] An MRI to evaluate Plaintiff's shoulder pain revealed

6

mild early disk desiccation at C2-3, C3-4 and C4-5, but the cervical spinal cord was normal without evidence of abnormal signal intensity. [Tr. 213.]

On February 27, 2009, radiologic studies were done on Plaintiff's left shoulder. [Tr. 332.] The findings showed "no acute fracture or subluxation is seen.  There is mild glenohumeral arthritis inferiorly.  No soft tissue abnormalities are appreciated.  Visualized chest demonstrates postsurgical changes of the heart." [Tr. 332-333.]

On March 26, 2009, Plaintiff presented to the VA Medical Center stating he was still having left shoulder pain not cardiac-related. [Tr. 367.] Plaintiff was reassured that x-rays showed only minimal arthritis, and that he should do the stretches and exercises that had been explained and demonstrated to him for his shoulder. [Tr. 368.]

      **C.**     **<u>Lumbar Fusion Surgery, GERD, Depression, Marijuana Dependency and Hypertension</u>**

Plaintiff has a history of lumbar fusion surgery in approximately 1989 and reports chronic low back pain. [Tr. 240, 303.] Radiologic studies of Plaintiff's lumbosacral area dated December 15, 2008, showed degenerative changes in the lower lumbosacral spine, and straightening and loss of the normal lordotic curvature consistent with muscular strain. [Tr. 302.] Radiologic studies of Plaintiff's lumbar spine dated February 27, 2009, showed no acute fracture or subluxation and minimal anterior osteophytosis. [Tr. 333.]  Plaintiff's chronic back pain is treated with pain medication (Hydrocodone) and Plaintiff was  referred to the VA Medical Center Pain Clinic. [Tr. 32, 240, 351.]

Plaintiff takes Omeprazole for gastroesophageal reflux disease. [Tr. 32, 240, 351.] Plaintiff is prescribed Prozac for depression and has not been treated by a mental health professional. [Tr. 32, 240, 351.] Plaintiff has been counseled regarding the risks of smoking

marijuana in light of his heart condition. [Tr. 239-240, 277.] Plaintiff takes Lisinopril and Metoprolol for managing his hypertension. [Tr. 32, 240, 351.]

### D. New Mexico Disability Determination Services - Martin Trujillo, M.D.

On December 23, 2008, Plaintiff was evaluated by Martin Trujillo, M.D., for the purpose of determining disability. [Tr. 303-305.] Plaintiff reported a history of "six heart attacks" and bilateral shoulder pain. [Tr. 303.] At the time of his exam, Plaintiff denied any recurrence of significant chest pain or anginal type symptoms, and reported that he drives and performs his activities of daily living. [Id.]

Dr. Trujillo performed a physical examination and reported as follows:

Impression:

1. Coronary artery disease status post three vessel bypass
2. Unstable angina
3. Acute coronary syndrome
4. Hypertension poor control
5. History of L5-S1 disk herniation status post diskectomy and fusion with recurrent chronic back pain. No current evidence of radiculopathy.
6. Gastroesophageal reflux disease.
7. Chronic bilateral shoulder pain.

Discussion:

With good compliance and proper cardiac follow up, he should be able to perform light to limited moderate duty.

[Tr. 305.]

### E. Psychiatric Review Technique - Elizabeth Chiang, M.D.

On January 6, 2009, State agency medical consultant Elizabeth Chiang, M.D., prepared a Psychiatric Review Technique based on her review of Plaintiff's medical records. [Tr. 306-318.]

8

Dr. Chiang determined that Plaintiff's depression and marijuana abuse were not severe and noted as follows:

> Claimant noted to be diagnosed with depression and prescribed fluoxetine. Exams during hospitalization in 7/08 noted no SI or HI.[3] Memory was intact. He was fully oriented. There was no speech deficit. He was able to respond to all questions. After was normal. He was cooperative with normal eye contact. He could participate in self-care within physical limitations. No evidence of depression or anxiety was noted. Claimant did report that he used marijuana on a daily basis.

[Tr. 250.] Dr. Chiang assessed that Plaintiff had no nonexertional functional limitations.

[Tr. 316.]

### F.   **Physical Residual Functional Capacity Assessment - Mary Lanette Rees, M.D.**

On January 22, 2009, State agency medical consultant Dr. Mary Lanette Rees prepared a Physical Residual Functional Capacity Assessment based on her review of Plaintiff's medical records. [Tr. 320-327.] Dr. Rees noted as follow:

> Claimant has MDI that could reasonably result in some limitation of function. As expected, severity of symptoms and their effect on function was exaggerated while non-compliant with meds and while smoking marijuana daily to treat pain. 12/08 CE records no significant chest pain now that claimant is compliant with meds. Partially credible with regard to alleged limitations listed on application. ADL form not included for review. Shoulder pain and back pain considered with this RFC.

[Tr. 325.] Dr. Rees assessed Plaintiff's exertional limitations as follows:

(1)   occasionally lift and/or carry 20 pounds;

(2)   frequently lift and/or carry 10 pounds;

(3)   stand and/or walk at least 2 hours in an 8-hour workday;

(4)   sit for a total of about 6 hours in an 8-hour workday; and

(5)   push and/or pull unlimited.

---

[3] Suicidal ideation/homicidal ideation.

9

[Tr. 321.]

### G.     Case Analysis - Janice Kando, M.D.

On May 15, 2009, State agency medical consultant Janice Kando, M.D., prepared a Case Analysis based on her review of Plaintiff's updated medical records (January 2009 through April 2009). [Tr. 458-459.] Dr. Kando noted that "[a] review of the initial claim shows Dr. Rees completed an RFC on 1/22/09 proposing physical capacity for a restricted range of light level work." [Tr. 458.] After reviewing Plaintiff's updated medical records, Dr. Kando concluded that "[t]he updated MER suggests claimant's current functioning has improved significantly after his recent cardiac intervention and is, at a minimum, consistent with the restrictions outlined in the initial level RFC which is affirmed as written." [Id.]

## ANALYSIS

Plaintiff asks this Court to address three issues on review.  First, that the ALJ erred in finding that Plaintiff's work attempt constituted substantial gainful activity. [Doc. 16 at 4.] Second, that the ALJ erred in determining the Plaintiff had the residual functional capacity to do light work. [Id.]   And third, that the ALJ's credibility determination is contrary to law. [Id.]

### A.     Step One Findings - Substantial Gainful Activity

Plaintiff argues that the ALJ erred in finding that Plaintiff's work in 2009 as an auto parts driver qualifies as substantial gainful activity because his work was done under special conditions and because his earnings fell well below the threshold income levels allowed by the Social Security Administration while still being considered disabled. [Doc. 16 at 10-12.] Defendant contends that the ALJ properly considered the nature of Plaintiff's work in determining that it was substantial; however, the Defendant concedes that the record evidence does not support the ALJ's finding that Plaintiff's earning exceeded the threshold for substantial

gainful activity. [Doc. 17 at 5.] That said, the Defendant argues that the ALJ's finding in this regard amounts to harmless error because she conducted a proper analysis at steps two through five. [Id.]  In his Reply, Plaintiff asserts that the error is not harmless because by considering Plaintiff's claim only after June 2009 (as opposed to his alleged onset date of July 1, 2008), Plaintiff's due process right to have his entire claim adjudicated fully and fairly is eroded. [Doc. 18 at 1.]

Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities," and may include part-time work. 20 C.F.R. § 404.1572(a). "Gainful work activity is work activity that [is done] for pay or profit" and includes any "kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Substantial gainful activity generally does not include non-work activity. 20 C.F.R. § 404.1572(c).

The Commissioner has prescribed guidelines to further substantiate the definition of substantial gainful activity. 20 C.F.R. § 404.1574. Earnings from work are the primary parameter by which substantial gainful activity is measured. 20 C.F.R. § 404.1574(a); *see also Fowler v. Bowen*, 876 F.2d 1451, 1454 n. 3 (10th Cir. 1989); *Hedge v. Richardson*, 458 F.2d 1065, 1067-68 (10th Cir. 1972).

At step one of the analysis, if a claimant is working and the work the claimant is doing qualifies as substantial gainful activity, then the Commissioner will find that the claimant is not disabled. The primary means of making this determination is to review the individual's gross earnings and if an individual's average monthly earnings from employment are above a set threshold amount, the claimant is presumed to be engaged in substantial gainful activity. 20

C.F.R. §§ 404.1574(a).  However, if an individual earns less than the threshold level calculated under the regulations, then the claimant is presumed to not be engaged in substantial gainful activity. 20 C.F.R. § 416.1574(b)(3)(i). *See Sheppard v. Astrue,* No. 10–6172, 426 Fed. Appx. 608, 610 (10th Cir. May 20, 2011) (noting that the controlling regulations explicitly require that the claimant's earnings be the primary consideration of the administrative law judge in resolving whether the claimant is engaging in substantial gainful activity and noting the presumption in favor of finding substantial gainful activity if the claimant's monthly earnings exceed the threshold level set forth in the regulations).

  Here the Plaintiff indicated on a "Work Activity Report" that he began work as an auto parts driver for Act Fast Delivery on October 15, 2008, but that he stopped working within six months because of his medical conditions. [Tr. 179.] Plaintiff testified he worked for approximately five or six months in 2009. [Tr. 30.]  Plaintiff reported earning $530 month and that he worked under special conditions having his nephew with him who helped drive and did all the loading and unloading. [Tr. 41-42, 179.] The Defendant has conceded that the record evidence does not support the ALJ's finding that Plaintiff's earning exceeded the threshold amount for substantial gainful activity.  The Court agrees.  However, the Court does not agree that this amounts to harmless error because the ALJ did not conduct a proper analysis at steps two through five as argued by Defendant; *i.e*., the ALJ's step four findings are not supported by substantial evidence. [*See* Section B. Step Four Findings infra.] Thus, the ALJ committed reversible legal error by failing to conduct her step-one analysis within the proper analytical framework.  The ALJ essentially ignored Plaintiff's earnings.  As such, the ALJ failed to give Plaintiff the benefit of a rebuttable presumption that Plaintiff had not performed work at the SGA level from July 1, 2008, through the date of the hearing before the ALJ on April 22, 2010.

Plaintiff was entitled to such a rebuttable presumption because his average monthly earnings in 2009 fell below the threshold monthly levels for that year.[4]

For these reasons, the ALJ's step one finding that Plaintiff engaged in substantial gainful activity is not supported by substantial evidence nor were the correct legal standards applied. This is error.

### B. Step Four Findings - Residual Functional Capacity

Plaintiff next argues that the ALJ erred in determining the Plaintiff had the residual functional capacity to do light work. Plaintiff specifically contends that the ALJ failed to consider all of the medical opinion evidence, and that the medical opinion relied upon by the ALJ did not specifically address Plaintiff's ability to do work-related activities. [Doc. 16 at 14.] Plaintiff also asserts that Dr. Trujillo's use of the term "light" does not comport with the meaning of that term as defined by the Social Security Administration. [Id.] Defendant argues that while the ALJ did not address the medical opinions of Drs. Mary Rees and Janice Kando explicitly, she did so implicitly by stating she had considered the "entire record." [Doc. 17 at 6.]

In determining a claimant's physical abilities, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1545(d) , 416.945; *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "[T]he ALJ must make specific [RFC] findings." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). And those findings "must be supported

---

[4] *See* http://www.ssa.gov/oact/cola/sga.html.

by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The RFC assessment must include a narrative discussion as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual case perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistences or ambiguities in the evidence in the case record were considered and resolved.
>
> . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ's analysis does not meet these standards. The ALJ determined as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only occasionally reach overhead due to shoulder pain.

[Tr. 14.] In making her RFC determination, the ALJ failed to account for the standing and sitting limitations assessed and affirmed by Drs. Mary Rees and Janice Kando, limitations which restrict Plaintiff's exertional capacity to sedentary work. *See* SSR 83-10, 1983 WL 31251, *6 (S.S.A.). While the Defendant argues that the ALJ's silence in this regard does not suggest these opinions were ignored, it is nonetheless unclear to the Court how these medical source opinions factored into the ALJ's decision. What is clear is that the ALJ relied solely on the nontreating source opinion of Dr. Martin Trujillo, who did not set forth specific limitations and only generally stated Plaintiff could perform "light to limited moderate duty" work. The ALJ also

stated that her RFC assessment was not unreasonable in light of Plaintiff's "recent work as a truck driver," yet she failed to account for the special conditions under which Plaintiff worked; *i.e.*, his nephew did the driving and all of the loading and unloading.

Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated in accordance with factors contained in the regulations. 20 C.F.R. § 404.1527(d); SSR 96–5p, West's Soc. Sec. Reporting Serv ., Rulings 123–24 (Supp.2013). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. § 404.1527(d)(2–6); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001) (citing *Goatcher v. Dep't of Health & Human Servs*., 52 F.3d 288, 290 (10th Cir.1995)).

A physician who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir.2003). But, "the opinion of an examining physician [ (a nontreating source) ] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." *Id*. at 763 (citing *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir.1995)). However, opinions of non-treating sources are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record. *Robinson v. Barnhart*,

15

366 F.3d 1078, 1084 (10th Cir.2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir.1987) (citing *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983), *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982), and *Wier ex rel. Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir.1984)).

While the Court acknowledges that a nontreating source opinion is generally given more weight than the opinions of nonexamining sources who have merely reviewed the record, the Court's review of the decision reveals that the ALJ overlooked or ignored the contrary limitations opined by both Drs. Mary Rees and Janice Kando, and failed to explain how she handled those opinions. Therefore, remand is necessary for the Commissioner to weigh the medical source opinions properly.

The Court will not address Plaintiff's remaining claim of error. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## CONCLUSION

For all of the foregoing reasons, this Court finds that the ALJ's determination is not supported by substantial evidence and that correct legal standards were not applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision [Doc. 16] is **GRANTED.**

_____
**ALAN C. TORGERSON
United States Magistrate Judge,
Presiding by Consent**